In the Matter of the Application of LAURA A. PALMER, Plaintiff, for a Mandamus Order against FRANK MANN, as Tenement House Commissioner of the Tenement House Department of the City of New York, Borough of Manhattan, and Others, Respondents.

Supreme Court, New York Special Term, January (Received March, 1923).

New York city — building zone resolution — amendment of November 25, 1921 — Central Park frontage included — resolution and amendment constitutional — presumption that amendment is reasonable — when building zone resolution controls over provisions of Tenement House Law.

Under the authority conferred by sections 242-a and 242-b of the Greater New York charter, which were added by chapter 470 of the Laws of 1914, the board of estimate and apportionment on July 25, 1916, adopted the building zone resolution. In 1916 (Laws of 1916, chap. 497) said section 242-a was amended by adding thereto the following: " The board may from time to time after public notice and hearing amend, supplement or change said regulations or districts but in case a protest against a proposed amendment, supplement or change be presented, duly signed and acknowledged by the owners of twenty per centum or more of the frontage proposed to be altered, or by the owners of twenty per centum of the frontage immediately in the rear thereof, or by the owners of twenty per centum of the frontage directly opposite the frontage proposed to be altered, such amendment shall not be passed except by a unanimous vote of the board." Section 23 of the building zone resolution contains the same provisions in substantially the same language. By an amendment to the height district map of the building zone resolution adopted by said board on November 25, 1921, said map was changed " from a one and one-half times to a three-quarter times height district Fifth avenue from the northerly line of East 60th Street to the southerly line of East 96th Street, together with East 72nd Street, East 79th Street, East 86th Street and the southerly side of East 96th Street, from Fifth Avenue to a line 100 feet west of Madison Avenue," and " the remaining area between East 60th Street and East 96th Street, extending from Fifth Avenue to a line 100 feet west of Madison Avenue," was changed " from a one and one-half times to a one and a quarter times height district." *Held*, that since the amendment was within the power of the body which passed it the presumption is that it is reasonable and just and the judicial power to declare it void·can be exercised only when from the inherent character of the amendment or from evidence showing its operation and effect it is demonstrated to be otherwise, and the burden of showing its unreasonableness is upon the party asserting it.

In the absence of qualifying words with relation to Fifth avenue the natural meaning of the words " from Fifth avenue " as used in the amendment must be the whole of that avenue, not only the easterly side thereof.

The frontage on the west side of Fifth avenue within the limits of Central Park is clearly a part of the whole frontage to be altered by the language of said amendment and should be included in the estimate of the total frontage proposed to be altered thereby.

In this view twenty per centum of the owners of such " frontage to be altered " have not filed protests as required by section 242-a of the charter and section 23 of the building zone resolution, hence it must be held that the unanimous con-

sent of the board of estimate and apportionment to effect the change was not necessary.

Upon denying an application for a peremptory mandamus order requiring the tenement house commissioner to receive, consider, approve and pass plans theretofore filed with him by the petitioner for the erection upon her premises, situate at the northeast corner of Fifth avenue and East Seventy-third street in the borough of Manhattan, of a tenement house or apartment building to approximately the height of one hundred and fifty feet above the curb, and to compel said tenement house commissioner to issue a permit for the erection, construction and completion of said building, *held,* that the building zone resolution, as well as the amendment thereto, is constitutional and valid, and that the refusal of the tenement house commissioner to approve the plans of the proposed building and to issue a permit for the erection of said building on the ground that said plans violated the amendment to the height district map of said building zone resolution, was right.

As the height requirements of the building zone resolution as amended on November 25, 1921, in a three-quarter times district are more restrictive than those contained in section 51 of the Tenement House Law the case at bar under section 171 of the Tenement House Law is controlled by the resolution as amended which limits the height of the proposed building to seventy-five feet.

MOTION for a peremptory mandamus order.

*Taylor, Knowles & Hack* (*Walter G. Dunnington* and *Robert B. Knowles,* of counsel), for petitioner.

*George P. Nicholson,* corporation counsel (*William T. Kennedy,* of counsel), for respondent Tenement House Commissioner.

*Campbell, Harding & Pratt,* for respondent Thornton Realty Company.

*Moore, Hall, Swan & Cunningham,* for respondent William Ziegler, Jr.

*Evarts, Choate, Sherman & Leon* (*Edward Harding, John H. Jackson* and *Joseph H. Choate, Jr.,* of counsel), for respondent Joseph H. Choate, Jr.

*Robert H. Koehler,* for respondent The Fifth Avenue Association, Inc.

GIEGERICH, J. The petitioner seeks a peremptory mandamus order requiring the respondent Frank Mann, as tenement house commissioner, to receive, consider, approve and pass the plans filed by the petitioner for the erection upon her premises, situate at the northeast corner of Fifth avenue and East Seventy-third street, in the borough of Manhattan, city of New York, of a tenement house or apartment building to approximately the height of 150 feet above the curb, and to compel him to issue a permit for the erection, construction and completion of said building. Prior to making such motion the petitioner filed plans for the

erection of such building with the tenement house commissioner, who refused to approve the same for the reason that they violated amendment No. 138 to the height district map, sections 5, 6, 8 and 9 of the building zone resolution, adopted by the board of estimate and apportionment on November 25, 1921. The motion is opposed by the corporation counsel on behalf of the respondent, the tenement house commissioner, and by the Thornton Realty Company, William Ziegler, Jr., Joseph H. Choate, Jr., and the Fifth Avenue Association, Inc., who were made respondents by orders entered on various dates. By the terms of such amendment the height district map in question was changed " from a one and one-half times to a three-quarter times height district Fifth avenue from the northerly line of East 60th Street to the southerly line of East 96th Street, together with East 72nd Street, East 79th Street, East 86th Street and the southerly side of East 96th Street, from Fifth Avenue to a line 100 feet west of Madison Avenue," and " the remaining area between East 60th Street and East 96th Street, extending from Fifth Avenue to a line 100 feet west of Madison Avenue," was changed " from a one and one-half times to a one and a quarter times height district." The building zone resolution was originally adopted by the board of estimate and apportionment on July 25, 1916, under the authority conferred by sections 242-a and 242-b of the Greater New York charter, which were added by chapter 470 of the Laws of 1914. Chapter 497 of the Laws of 1916 amended the last-mentioned laws by adding the following to section 242-a: " The board may from time to time after public notice and hearing amend, supplement or change said regulations or districts but in case a protest against a proposed amendment, supplement or change be presented, duly signed and acknowledged by the owners of twenty per centum or more of the frontage proposed to be altered, or by the owners of twenty per centum of the frontage immediately in the rear thereof, or by the owners of twenty per centum of the frontage directly opposite the frontage proposed to be altered, such amendment shall not be passed except by a unanimous vote of the board." Section 23 of the building zone resolution contains the same provisions in substantially the same language. The said amendment No. 138 was adopted by the board of estimate and apportionment by an affirmative vote of thirteen to a negative vote of three. Immediately after the adoption of such amendment a motion was made to reconsider the vote by which it was adopted, which was laid over until subsequent dates. No further action, however, was taken on such motion to reconsider, after the corporation counsel had, at the request of the said board, given an opinion " on the question

as to whether or not the frontage on Fifth avenue within the limits of Central Park should be construed as part of the frontage to be considered in making a determination (pursuant to section 242-a of the charter and the building zone resolution of July 25, 1916) as to whether or not the opposition exceeds or is less than 20% of the frontage to be altered." The petitioner claims that the owners of twenty per centum of the frontage within the district have duly filed petitions opposing the adoption of such amendment, and that since such amendment could not be adopted except by the unanimous vote of the said board, and as three votes were cast against such amendment, it was not legally adopted. The respondents concede that if Central Park is not a part of the frontage proposed to be altered the protests of twenty per centum of the property owners were duly filed and that the adoption of the amending resolution required unanimous consent. The question thus arises whether the frontage of Central Park on Fifth avenue is a part of the area " proposed to be altered " by the said amendment. According to the heights district map, section Nos. 5, 6, 8 and 9, adopted July 25, 1916, Central Park was expressly designated as being within the so-called one and one-half district. By so designating such city-owned property the said board clearly intended that it should be treated in the same manner as privately-owned property, and that any building that may be erected there should be subject to zoning regulations. As pointed out in the opinion rendered by the corporation counsel to the said board: " In the consummation of the plan to regulate the height of buildings under section 242-a of the charter your board originally included Central Park within the scope of such regulations." The park was considered and contemplated by the framers of the building zone resolution in perfecting its regulations, and neither in said sections of the charter nor in the building zone resolution is there indicated any purpose or intent to treat city-owned property in any different manner or status than privately-owned property. On the other hand, there are compelling reasons why the city, as the owner of property on any of its streets or in any of its sections should have a voice in approving or disapproving of any change in the resolution proportionate to its frontage and to the same extent as the owners of private property. The corporation counsel further in his opinion expressed the view that the amendment itself does not by its terms exclude from its effect the west side of Fifth avenue and that the frontage on the west side of Fifth avenue, at the point in question, is part of the " frontage to be altered " and should be included in the estimate of the total frontage proposed to be altered by the amendment. The petitioner's

counsel insist, however, that only the east side of Fifth avenue was included in the amendment. In support of such contention the argument is advanced that the southerly boundary of the district is fixed by the amendment as " the northerly line of East Sixtieth street; " the northerly boundary line is fixed as " the southerly line of East Ninety-sixth street; " that the words " from Fifth avenue to a line one hundred feet west of Madison avenue " fix the easterly and westerly boundary lines and that the word " from " can have only one meaning, to wit, the easterly line or side of Fifth avenue. Giving to the language used its ordinary meaning (*Osborne* v. *International Ry. Co.*, 226 N. Y. 421), and such reasonable construction as will, if possible, make all its parts harmonize and render them consistent with its scope and purpose (*Price* v. *County of Erie*, 221 N. Y. 260), the amendment would seem to include both sides of Fifth avenue. There are no regular streets with their building lines across Central Park, and the only convenient points of reference along the west side of Fifth avenue would be the few transverse roads, which, however, are located far apart. In designating in the amendment the portion of Fifth avenue which was to be altered it was, therefore, necessary to use the northerly or southerly lines of the cross streets running east from Fifth avenue as points of reference for the west side of that avenue as well as the east side. As I read the amendment the limiting words in question have nothing whatever to do with the frontage on Fifth avenue because they are applicable only to certain side streets. If it had been the intention of the board to include or exclude one side of said avenue it is reasonable to conclude that it would have done so in the same manner as it did with reference to East Sixtieth street and East Ninety-sixth street by the use of qualifying words, such as the northerly side or the southerly side. Not having used qualifying words with relation to Fifth avenue, certainly the natural meaning of the words " from Fifth avenue " as used in the amendment must be the whole of that avenue and not the easterly side thereof, as claimed by the petitioner. The intention of the said board to include the west side of Fifth avenue as part of the area which was to be altered is evidenced by the letter of that body, countersigned by its assistant secretary to the corporation counsel; by the latter's opinion rendered to it and by the board's refusal, after the receipt of such opinion, to reconsider its action in passing the amendment. I fully agree with the corporation counsel that the frontage on the west side of Fifth avenue, within the limits of Central Park, is clearly a part of the whole frontage to be altered by the language of the amendment and that it should be included in the estimate of the

total frontage proposed to be altered by the amendment. In this view twenty per centum of the owners of such " frontage to be altered " have not filed protests as required by section 242-a of the charter and section 23 of the building zone resolution, and hence it must be held that the unanimous consent of the said board to effect the change was not necessary. The effect of the amendment, therefore, is to limit the height of buildings on Fifth avenue between Sixtieth and Ninety-sixth streets and on Sixtieth, Seventy-second, Eighty-sixth and Ninety-sixth streets within the boundaries set out to three-quarter times the width of these streets (one hundred feet) or seventy-five feet, and similarly to limit the height in the remainder of the district to one and one-quarter times the width of the other streets (sixty feet) or seventy-five feet. The petitioner also contends that the amendment is unreasonable, oppressive, discriminatory and unlawful, and contravenes the provisions of section 242-a of the Greater New York charter. This section, so far as applicable, provides: " Such regulations shall be designed to secure safety from fire and other dangers and to promote the public health and welfare, including, so far as conditions may permit, provision for adequate light, air and convenience of access. The board shall pay reasonable regard to the character of the buildings erected in each district, the value of the land and the use to which it may be put to the end that such regulations may promote public health, safety and welfare and the most desirable use for which the land of each district may be adapted and may tend to conserve the value of buildings and to enhance the value of land throughout the city." Since the amendment was within the power of the body which passed it, the presumption is that it is reasonable and just, and the judicial power to declare it void can be exercised only when, from the inherent character of the amendment or from evidence showing its operation and effect, it is demonstrated to be otherwise. The burden of showing the unreasonableness from evidence is on the person asserting it. *People ex rel. Knoblauch* v. *Warden*, 216 N. Y. 154. It cannot be said as matter of law on the facts appearing in the papers that the amendment is unreasonable and unjust, and it would seem after careful consideration that the amendment meets every known test as to reasonableness and that it is not discriminatory nor oppressive and that it was adopted to secure safety from fire or other dangers, to promote public health and welfare, promote the most desirable use for which land in the district may be adapted and to conserve the value of buildings therein. The petitioner claims that the language of the amendment is barren

26

of any inference that it was adopted for any of the purposes above mentioned, but that on the contrary its sole purpose, according to the chief engineer of the said board and the proposers of the amendment, is to restrict the district to single private dwellings and to prohibit the erection of apartment houses. The purpose and scope of the amendment, however, are not to be gathered alone from such sources, but from all the elements connected therewith which were considered by the said board when it was adopted, including the history of the amending resolution. *Matter of Hamlin*, 226 N. Y. 407; *People ex rel. Central Union Trust Co.* v. *Wendell*, 197 App. Div. 131; affd., 231 N. Y. 629. The board is not required when making changes or amendments to cover the whole field of what has been said on the subject of zoning by the various commissions which framed the original legislation, or to prepare a voluminous preamble to every amending resolution, reciting the fire hazards and dangers to the public health and welfare, as outlined by experts in fire and health matters, when the original resolution was adopted. These are matters of which the officials are presumed to have knowledge and to have acted upon in the exercise of their judgment and discretion, with which the courts are reluctant to interfere. *People* v. *Charles Schweinler Press*, 214 N. Y. 395; *Lincoln Trust Co.* v. *Williams Bldg. Corp.*, 229 id. 313. The petitioner claims further that even assuming that the amendment was legally adopted, it is nevertheless lawful for her to erect the proposed building because, as claimed, such building on its Fifth avenue side will face on Central Park. Especial reliance is placed by the petitioner upon subdivision c of section 1 of article 1 of the building zone resolution, which provides as follows: " ' The width of the street ' is the mean of the distances between the sides thereof within a block. Where a street borders a public place, public park or navigable body of water the width of the street is the mean width of such street plus the width, measured at right angles to the street line of such public place, public park or body of water." The petitioner contends that in applying height regulations the width of Central Park, which it is claimed is over 500 feet, should be added to the width of Fifth avenue, and that, therefore, a resolution restricting the height of a building to " three-quarter times the width of the street " does not prevent the erection of the proposed building, which is much less than three-fourths of the width of Central Park. If the construction claimed be applied it would make no difference whether the district in question were within a one or three-quarter times height district, as there would be practically no restriction whatever upon the height of buildings in the district

in question beyond a fanciful restriction that they might not exceed 375 feet in height. Such a result, however, was never intended by the framers of the building zone resolution. Section 51 of the Tenement House Law, as amended by chapter 454 of the Laws of 1912, provides in part as follows: " Sec. 51. Height. The height of no tenement house hereafter erected shall by more than one-half exceed the width of the widest street upon which it stands." Section 8 of the building zone resolution, adopted by the said board on July 25, 1916, as amended, contains regulations for the height of buildings and divides the city into six classes of height districts. Class a is the only one of these regulations with which we are concerned in this litigation, and reads as follows: " In a three-quarter times district no building shall be erected to a height in excess of three-quarter times the width of the street, but for each one foot that the building or a portion of it sets back from the street line one foot shall be added to the height limit of such building or such portion thereof." Section 9 of said resolution provides for height district exceptions, under which buildings may be constructed to a greater height than is permitted by section 8 of such resolution, above set forth. Subdivision a of said section 9 reads as follows: " Sec. 9. Height district exceptions. (a) On streets less than 50 feet in width the same height regulations shall be applied as on streets 50 feet in width and, except for the purposes of paragraph d of this section, on streets more than 100 feet in width the same height regulation shall be applied as on streets 100 feet in width." The petitioner argues that the subdivision just above quoted (§ 9, subd. a) expressly relates to only two classes of streets, namely, those under 50 feet in width and those over 100 feet in width and that Fifth avenue does not come under either heading, for the reason, as claimed, it is exactly 100 feet in width and consequently it is not " less than 50 feet in width " nor is it " more than 100 feet in width." With this argument I cannot agree. The intention and effect of the exceptions so contained in said subdivision a of said section is to create for the purpose of measuring height limitations a minimum and a maximum " width of the street " and to fix a maximum of 100 feet. The framers of the building zone resolution took particular care to fix a minimum and maximum basis for determining the height of buildings. Fifth avenue is conceded to be 100 feet in width, so that even if it faces upon a public park no addition can be made to its width under the provisions of law above set forth. In order to fully understand the effect of the exceptions contained in section 9 of the building zone resolution they should be read immediately following every provision of such resolution that has

to do with height limitations. The new Standard Dictionary defines an exception to be " that which is not covered by or is at variance with a rule or statement." The rule is the definition in article 1, section 1, subdivision c, and the exception is article 3, section 9, subdivision a, *supra.* Any other construction gives no effect to the designation of article 3, section 9, subdivision a, as an exception. The effect contended for by the petitioner would, on the contrary, reverse the situation and treat such article 3, section 9, subdivision a, as the rule and the said article 1, section 1, subdivision c, as the exception to the general rule, which is obviously not the fact. Section 171, subdivision 1, of the Tenement House Law, as amended by chapter 319 of the Laws of 1916, provides: " § 171. Laws repealed. 1. All statutes of the state and ordinances of cities of the first class, so far as inconsistent with the provisions of this chapter, are hereby repealed; provided, that nothing in this chapter contained shall be construed as repealing or abrogating any present law or ordinance in any city of the first class, further restricting or prohibiting the occupation of cellars, or increasing the amount of air space to each individual occupying a room, or as prohibiting any further ordinance in respect thereto. Wherever the provisions of any local ordinance or regulation impose requirements for lower height of building or a less percentage of lot that may be occupied or require wider or larger courts or deeper yards, the provisions of such local ordinance or regulation shall govern. Where, however, the provisions of this chapter impose requirements for lower height of building or a less percentage of lot that may be occupied or require wider or larger courts or deeper yards than are required by such local ordinance or regulation, the provisions of this chapter shall govern." As already stated, the height requirements of the building zone resolution, as amended November 25, 1921, in a three-quarter times district, are more restrictive than those contained in section 51 of the Tenement House Law. Under section 171 of such law the provisions of the said resolution, therefore, control the case at hand and limit the height of the proposed building to seventy-five feet. Another point urged by the petitioner is that the Building Zone Law is unconstitutional. The constitutionality of the building zone resolution was upheld by the Court of Appeals in *Lincoln Trust Company* v. *Williams Bldg. Corp., supra,* wherein it was held that the resolution was a proper exercise of the police power. The right of the state of Massachusetts under the police power to regulate the height of buildings in Boston and establish different height districts was upheld by the Supreme Court of the United States in *Welch* v. *Swasey,* 214 U. S. 91; 53 L. Ed. 923. The petitioner

maintains that the board of estimate and apportionment is without constitutional power to enact a zoning ordinance, because, as claimed, the legislative power of the city is vested exclusively in the board of aldermen.   The decisions in *Wilcox* v. *McClellan,* 185 N. Y. 9; *Townsend* v. *Mayor, etc., of New York,* 16 Hun, 362; *People ex rel. Deitz* v. *Hogan,* 214 N. Y. 216, concurring opinion of Seabury, J., at p. 230, hold adversely to this contention.   In these cases it was held that the legislature has the power to transfer any municipal legislative power (other than the right to apportion the counties included in the city into assembly districts) to such other governmental agencies, including the board of estimate and apportionment, as it may select or create.   Having reached the conclusion that the amending resolution did not require unanimous consent it will not be necessary to consider the point raised by the respondents that the petitioner should first have applied to the board of appeals for relief before bringing on this motion.   My decision is that the building zone resolution as well as the amendment in question is constitutional and valid and that the refusal of the respondent tenement house commissioner to approve the plans of the proposed building and to issue a permit for the erection thereof was right and that the application for a peremptory mandamus order should be denied, with fifty dollars costs.   Settle order on notice.

Ordered accordingly.