AMERICAN AGGREGATES CORPORATION, APPELLEE, *v.* WARREN COUNTY COMMISSIONERS ET AL., APPELLANTS.

(No. CA86-06-035—Decided April 20, 1987.)

*Lucas, Prendergast, Albright, Gibson & Newman* and *Richard C. Brahm,* for appellee.

*James L. Flannery,* prosecuting attorney, and *Timothy A. Oliver,* for appellants.

*Per Curiam.* This cause came on to be heard upon the appeal from the Court of Common Pleas of Warren County.

This is an appeal by defendants-appellants, the Warren County Commissioners et al., from a decision of the Warren County Court of Common Pleas which found that appellants' refusal to grant appellee's request for permission to build and operate a concrete batching facility was illegal, unreasonable, and unsupported by a preponderance of the evidence in the record.

Plaintiff-appellee, American Aggregates Corporation, leases approximately one hundred fifty acres in Franklin Township, Warren County, on which it operates a sand and gravel pit. This pit began operations in the early 1950s using 64.743 acres of the one-hundred-fifty-acre property. At that time, Warren County had not yet adopted a county zoning plan.

Perhaps due to a lack of good planning, immediately adjacent to appellee's sand and gravel operation is a residential neighborhood called Miamiview Subdivision. Although this area has never been zoned for residential use, it nevertheless contains a significant number of homes, all of which were constructed while appellee's sand and gravel pit was in existence.

In 1959, Warren County approved a countywide zoning plan. By virtue of that plan, both appellee's one hundred fifty leased acres and Miamiview Subdivision were placed in a heavy industry zone. When, in 1972, Warren County recodified its zoning ordinances, by adopting the underlying township's zoning map, both appellee's sand and gravel pit and Miamiview Subdivision remained in a heavy industry zone.

In 1979, appellee sought to expand its operation by excavating its remaining eighty-five acres. Before it could expand, however, Warren County Rural Zoning Code Section 18.04 required it to submit a planned unit development (hereinafter "PUD") overlay for the affected area. Although appellee's one hundred fifty acres were zoned for heavy industry, it prepared and submitted a PUD which was subsequently approved. On July 27, 1979, appellee's business expanded to include its entire one hundred fifty acres.

In 1984, appellee filed a request to modify its PUD by locating a concrete batch plant on its property adjacent to its sand and gravel pit. Plans for the batch plant modification were prepared, submitted to the Regional Planning Commission, and a favorable recommendation was received. Notwithstanding this favorable recom-

mendation, when the matter reached appellants and a public hearing was held, residents of Miamiview Subdivision appeared to oppose the proposal. At this hearing appellants were persuaded to deny the proposed modification even though the area's heavy industry zoning classification would normally permit the operation of a concrete batching plant.

Dissatisfied with appellants' decision, appellee filed an appeal in the Warren County Court of Common Pleas. After conducting a hearing in the matter at which testimony was taken, the common pleas court held appellants' decision was illegal, unreasonable, and unsupported by a preponderance of the evidence. Central to the common pleas court's decision was its finding that R.C. 303.022 does not permit a county to impose a PUD on land which is zoned for industrial rather than residential use. This appeal followed the common pleas court's reversal of the commissioners' decision.

In their brief appellants assign two errors:

"The Warren County Common Pleas Court committed error when it decided as a matter of law that the action taken by the Warren County Board of County Commissioners was illegal in derogation of the laws of the state of Ohio."

"The trial court committed error when it failed to determine, based upon the evidence submitted to it, that the decision of the Warren County Commissioners was legal, reasonable, and supported by a preponderance of the evidence."

Upon reviewing appellants' two assignments of error we find they are essentially identical. Both challenge the legality of the trial court's conclusion that a county lacks the authority to impose a PUD on land which is zoned for industrial use. Accordingly, we shall combine appellants' two assignments of error into one challenging the validity of the trial court's conclusion that R.C. 303.022 does not permit the establishment of a PUD in an unincorporated area zoned for industry.

We begin our analysis of appellants' assignment of error with a simple proposition. Zoning regulations are a result of the exercise of governmental police power. *Euclid* v. *Amber Realty Co.* (1926), 272 U.S. 365; *Pritz* v. *Messer* (1925), 112 Ohio St. 628, 149 N.E. 30; *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259, 17 O.O. 3d 167, 407 N.E. 2d 1369. Under Section 1, Article II of the Ohio Constitution, and with only one notable exception,[1] the police power of this state is entrusted to the Ohio General Assembly.

In the area of zoning or land use control the General Assembly has delegated a portion of its police power to Ohio counties in R.C. 303.02.[2] R.C. 303.02 permits a county's board of

---

[1] The General Assembly's police power is limited by Section 3, Article XVIII of the Ohio Constitution which grants municipalities the power of local self-government. Expressly included within this constitutional provision is authority for municipalities to enact their own police power laws.

[2] R.C. 303.02 provides:

"For the purpose of promoting the public health, safety, and morals, the board of county commissioners may in accordance with a comprehensive plan regulate by resolution the location, height, bulk, number of stories, and size of buildings and other structures, including tents, cabins, and trailer coaches, percentages of lot areas which may be occupied, set back building lines, sizes of yards, courts, and other open spaces, the density of population, the uses of buildings and other structures including tents, cabins, and trailer coaches and the

commissioners to enact zoning resolutions for the unincorporated[3] portions of the county. Although R.C. 303.02 grants county commissioners broad zoning discretion, it does limit that discretion in at least one fashion — its regulations must be uniform within each zone but different zones may have different regulations.

Expanding upon R.C. 303.02, in 1972 the General Assembly enacted R.C. 303.022[4] authorizing boards of county commissioners to adopt PUD regulations wherein the county zoning, subdivision, and platting regulations need not be uniform, but may vary in order to promote public health, safety, and morals. In granting boards of county commissioners the authority to establish or modify PUD regulations, the General Assembly defined an R.C. 303.022 PUD as:

"* * * a development which is

planned to integrate residential use with collateral uses, in which lot size, setback lines, yard areas, and dwelling types may be varied and modified to achieve particular design objectives and make provision for open spaces, common areas, utilities, public improvements, and collateral nonresidential uses."

In *Gray* v. *Trustees of Monclova Twp.* (1974), 38 Ohio St. 2d 310, 311, 67 O.O. 2d 365, 313 N.E. 2d 366, 367, the Ohio Supreme Court recognized that the historic purpose behind creation of PUDs was to allow flexibility in large scale *residential* projects built within a single zoning classification. The R.C. 303.022 definition of PUD confirms this observation's accuracy. It provides for variations in permissible uses of property located within a single residential zone in order to promote a variation in housing density and

uses of land for trade, industry, residence, recreation, or other purposes in the unincorporated territory of such county, and for such purposes may divide all or any part of the unincorporated territory of the county into districts or zones of such number, shape, and area as the board determines. All such regulations shall be uniform, for each class or kind of building or other structure or use, throughout any district or zone, but the regulations in one district or zone may differ from those in other districts or zones."

[3] The county board of commissioners is given zoning authority only over unincorporated areas of the county because Section 3, Article XVIII of the Ohio Constitution gives municipalities the power to zone themselves.

[4] R.C. 303.022 provides:
"A county zoning resolution or amendment adopted in accordance with Chapter 303. of the Revised Code may establish or modify planned-unit development regulations, for the purpose of conserving land through more efficient allocation of private

lots, multi-family dwelling units, common grounds, and nonresidential uses, promoting greater efficiency in providing public and utility services, and securing the benefits of new techniques of community development and renewal. Within a planned-unit residential development district or zone, the county zoning, subdivision, and platting regulations need not be uniform, but may vary in order to promote the public health, safety, and morals, and the other purposes of this section. County regulations adopted pursuant to this section may require developers to obtain conditional or final certification of compliance with county zoning, subdivision, or platting regulations at specified stages of development.

"As used in this section, 'planned-unit development' means a development which is planned to integrate residential use with collateral uses, and in which lot size, setback lines, yard areas, and dwelling types may be varied and modified to achieve particular design objectives and make provision for open spaces, common areas, utilities, public improvements, and collateral nonresidential uses."

pattern. However, it is difficult to conceive how variations in housing density and pattern can be promoted or achieved when housing is a currently forbidden use of the property in question.

Based on our examination of R.C. 303.022, we are convinced the common pleas court's decision was correct. A PUD is not a proper zoning tool in an industrial zone under R.C. 303.022. Based on R.C. 303.022, we hold that the General Assembly has only authorized a board of county commissioners to establish or modify a PUD in an unincorporated residential zone. Moreover, we find, contrary to appellants' position, that the operation of a sand and gravel excavation business next to a residential neighborhood *when both are situated in a heavy industrial zone* cannot legitimately be called a "collateral nonresidential [use]" as that term is used in R.C. 303.022.

As an alternative reason to overturn the common pleas court's decision, appellants argue appellee's sand and gravel operation constitutes a nuisance to its adjacent neighbors. We find this argument unpersuasive because it is readily apparent that the residences adjacent to appellee's facility were built on land which was zoned for heavy industry. Were we to allow this nuisance argument to control and thereby limit appellee's business, we would thereby allow the interest of those who enjoy a nonconforming use of their property to overcome the interest of those whose use fits the applicable zoning scheme. We decline the invitation to do so.

Finally, appellants direct our attention to the future use of this land.

They point out that one day it will no longer support a sand and gravel operation and will then most likely be reclaimed for use as residential property. While, admittedly, appellee may one day abandon its industrial use of this site and perhaps even reclaim and restore the land, that possibility is not one which is foreseeable in the immediate future. That appellee may ultimately *intend* to reclaim or restore the land so that it can be used for residential purposes does not now make it residential property subject to R.C. 303.022. Indeed, from the record it appears that, reclamation aside, a substantial portion of this one hundred fifty acres lies in the Great Miami River's flood plain and would not be suitable for residences unless and until flood prevention steps were undertaken.

In conclusion, since appellants utilized zoning authority which they did not possess by imposing a PUD on this industrially zoned property, we find the trial court's decision — that appellants' action in imposing a PUD on this one hundred fifty acres was illegal, unreasonable, and unsupported by a preponderance of the evidence — was proper.[5] While it was certainly laudable for appellants to attempt to accommodate both sides' interests, use of a PUD to frustrate appellee's otherwise lawful use of its land was an inappropriate and unlawful usurpation of the zoning authority granted appellants by the General Assembly.

Appellants' assignments of error are overruled. The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein ap-

---

[5] To the extent appellants' second assignment of error argues the trial court applied an incorrect standard of review here, we find that argument not well-taken in light of the standard of review which is, required by R.C. 2506.04.

pealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

KOEHLER, P.J., HENDRICKSON and CASTLE, JJ., concur.

CASTLE, J., retired, of the Twelfth Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.