JOHN M. SCHWOERER *vs.* BOYLSTON MARKET ASSOCIATION.

The owners of a lot of land, by deed reciting that it was found necessary that a passageway twenty feet wide should be laid out and kept open over their lot for the accommodation of an adjoining parcel of land, granted for a valuable consideration to the owners of said parcel, their heirs and assigns, these rights, privileges and easements, namely, that a strip of the grantors' lot, twenty feet wide, and adjoining the grantees' parcel through its whole length, "shall not be subject to have any fence or building erected thereon," and that the owners of the parcel, and the future proprietors or occupants thereof, or of any part thereof, "shall have the right to the use, in common with" the said grantors, "of the said spaces of twenty feet wide for the accommodation of their said land or estates bounding thereon." *Held,* that the owner through mesne conveyances from said grantees of one of the lots into which their parcel was afterwards divided, was entitled, as appurtenant to his estate without express mention thereof in said deeds of conveyance, to have the strip of land twenty feet wide kept open to the sky; and might maintain a bill in equity against said grantors to prevent the erection by them of a building over said strip though so planned as to leave a passageway more than fifteen feet high under itself and to be supported upon buildings owned by said grantors adjoining said strip on either side thereof.

The proprietors of a lot of land granted such rights in a strip of it that the several owners of lots into which an adjoining parcel of land was afterwards divided became entitled to have the strip kept open to the sky; and one of said owners filed a bill in equity to restrain said grantors from constructing a building over the strip between buildings which they owned adjoining the strip on either side thereof. *Held*, that if, during the pendency of such a suit in equity, such a building should be erected by said grantors, in pursuance of a contract made by them, before the filing of the bill, with parties who, while the suit was pending, became lessees of said adjoining buildings, an effectual decree could be made for its removal without making the lessees parties to the bill, although the answer of the grantors alleged that they had " a contract for a valuable lease of the said buildings which requires them to erect said connecting structure, and that to be deprived of it would be a great and serious detriment to them." *Held, also*, that it was not necessary to make the owners of the other lots into which the parcel was divided parties to the bill.

BILL IN EQUITY, filed September 12, 1866, to restrain the defendants from constructing a building of the nature of a bridge across Boylston Square in Boston.

The bill alleged that on April 19, 1809, the defendants, owning a lot of land on the corner of Boylston and Washington (then Orange) Streets, (which lot was conveyed to them on the previous day by Ralph I. Reed and Joseph C. Dyer out of a large parcel of land, of the rest of which, adjoining the lot granted to the defendants on the south and west, Reed and Dyer continued owners in fee simple,) executed to Reed and Dyer a deed, which was duly recorded on the same day and contained the following clause:

" Whereas the said Reed and Dyer are proprietors of the land adjoining the said association's land, as above described, and it is found convenient to the parties and necessary for the accommodation of the said Reed and Dyer's land aforesaid that a passageway of twenty feet wide adjoining the same be laid out and kept open on the said association's land aforesaid; now be it known that, in consideration of the premises, and of the sum of two thousand seven hundred and thirteen dollars and fifty cents paid by the said Reed and Dyer, the receipt whereof the said association do hereby acknowledge, the said association do hereby give, grant, sell and convey to the said Reed and Dyer, their heirs and assigns, the rights, privileges, easements and benefits following, to wit: that all that part of the said association's land above described, which lies between the said southerly and westerly bounds thereof and two lines drawn parallel thereto, at a dis

tance of twenty feet (the one line northerly and the other east-erly) therefrom, shall not be subject to have any fence or building erected thereon; and that the said Reed and Dyer, and the future proprietors or occupants of said adjoining land, now owned by said Reed and Dyer, and of any part or parts thereof, shall have the right to the use in common with the said association of the said spaces of twenty feet wide, for the accommodation of their said land or estates bounding thereon; provided that they, the said Reed and Dyer, or future proprietors of their said adjoin-ing land or estates, shall not in any manner interfere with or obstruct the operation or effect of any by-laws or regulations which said association shall make and ordain; and provided also that the said Reed and Dyer shall make a sidewalk of five feet wide into said passageway, and pave a strip of five feet wide adjoining said sidewalk, and that the future proprietors of the estates aforesaid, now owned by said Reed and Dyer, adjoining the said twenty feet passageway, shall keep in good repair, at their own expense, the said sidewalk and five feet of pavement adjoining the same, comprising one half part of said twenty feet passageway; and the said Reed and Dyer shall be permitted to have steps projecting one foot in width from their said estates into said sidewalk."

The bill further alleged, that the provisos of this clause had always been complied with, and the spaces twenty feet wide therein described had ever since been used, without obstruction, by the public as well as the owners of the land bounding thereon, and had become known as Boylston Square; that on May 1, 1857, the plaintiff, through mesne conveyances from Reed and Dyer, became and had ever since been owner in fee simple of a lot of land, with a brick dwelling-house thereon, bounding on Boylston Square, with all the rights, easements, privileges and appurtenances thereto belonging; that all the rights, as to this lot of land, which Reed and Dyer acquired by the defendants' deed to them of April 19, 1809, became thereby vested in the plaintiff on May 1, 1857, and had belonged to him ever since; and that the defendants, in violation of these rights and against the plaintiff's remonstrance, had begun to construct

a building at some height above the ground, across Boylston Square at the entrance thereof from Washington Street, which building would impair ingress to and egress from Boylston Square, and obstruct the view of and from the plaintiff's lot, and lessen the value of the lot.

The prayer was for an injunction on the defendants against erecting such a structure; and for general relief.

In their answer, the defendants demurred to the bill on the ground that the case stated was not one which entitled the plaintiff to relief in equity; and, further answering, admitted their ownership by purchase from Reed and Dyer on April 18, 1809, of the lot on the corner of Boylston and Washington Streets, and of their deed of April 19, 1809, to Reed and Dyer, as above quoted; alleged their purchase, and ownership for many years, of a piece of land fronting on Washington Street, (which also formed part of the original parcel of Reed and Dyer,) so that at the entrance of Boylston Square from Washington Street they were owners of both the lots of land, and of the buildings thereon, between and affixed to which the structure complained of was in process of erection; described this structure as a covered passageway, twelve feet high, built fifteen feet and nine inches above the ground; alleged also that they "have a contract for a valuable lease of the said buildings which requires them to erect said connecting structure, and that to be deprived of it would be a great and serious detriment to them;" admitted the plaintiff's ownership of a lot of land on Boylston Square; alleged that the structure in no way diminished the value of the plaintiff's premises; "that the nearest part of said elevated passage is distant from the nearest part of the premises of the plaintiff not less than one hundred and seventy-five feet; that it does not, and cannot in any manner whatever, obstruct the use of said strip of land [Boylston Square] as a passageway, cr impede the circulation of air, or intercept therefrom the rays of light, that not a single ray of light passing to the premises of the plaintiff is in any manner interfered with by the same; that the premises of the plaintiff have their common and most usual and largest access, as well as abundant air and light, from that part

of said strip of land which connects them with Boylston Street, and are in no manner prejudiced in these particulars by said structure, and that said structure leaves Washington Street in full and unimpeded view of the premises of the plaintiff, and in fact only screens from the view thereof a small portion, to wit, twelve feet square of the upper story of a building on the opposite of Washington Street, distant two hundred and fifty-six feet from the premises of the plaintiff, the view of which can be of no consequence or value to the premises of the plaintiff, and the screening of which only constitutes one of those limitations of prospect which must be reasonably considered as necessarily incident to a crowded city."

The answer further denied that, by the true construction of the clause quoted from the defendants' deed of April 19, 1809, to Reed and Dyer, any such rights were conferred on the plaintiff as were preferred in his bill, and alleged that the clause " was intended and understood by the parties to confer, and did in law and fact confer, only such easement or right of passage in the strip of land therein described as was necessary for the accommodation of said adjoining land," and no right of prospect or view whatever. It also denied that the provisos of that clause had been complied with; and that the sidewalks and pavement had ever been constructed or kept in repair as therein provided. And it alleged that since April 19, 1809, the defendants erected a wooden structure in the same place with that complained of, and having substantially the same effect on Boylston Square, and maintained it for more than twenty years, and until within twenty years before the filing of the bill, without objection from anybody and with the full knowledge and acquiescence of the owners of the land bounding on Boylston Square.

The plaintiff filed a general replication, and at the hearing, before *Gray*, J., offered to prove, on the points at issue, the compliance by Reed and Dyer, and the subsequent proprietors of their land bounding on Boylston Square, with all the provisos of the defendants' deed of April 9, 1809; that all the rights, easements, privileges and appurtenances which by that deed

were attached to the lot of land of which he became owner on May 1, 1857, then vested in him, and ever since belonged to him; that ever since May 1, 1857, he had occupied the house on his lot as a residence for himself and his family, and as a boarding house; that the house covered the whole front of the lot, was three stories high, and had no means of access in front except through Boylston Square; that there had been no obstruction to the free use of Boylston Square by the owners of land bounding thereon and by the public, ever since April 19, 1809; that before the filing of the bill he served on the defendants a written remonstrance against the erection of the structure which they had commenced to build; that this structure was planned to be twenty-six feet and six inches deep from the entrance of Boylston Square, fifteen feet and nine inches above the ground, and one story high; that at the time of the filing of the bill the defendants had made no further progress with it than to lay one or two joists across the Square, between the buildings at the entrance thereof, but had since made much further progress that the structure would greatly lessen the value of his house and land, which prior to the beginning of the erection was upwards of $15,000, and would obstruct the view of and from the house, prevent the ingress or egress through Boylston Square of anything more than fifteen feet and nine inches high, and greatly incommode the plaintiff. And this offer of proof was accompanied by a plan of the premises, the accuracy of which it was agreed might be considered as proved for the purposes of the hearing, in which the relative situation of the proposed structure was represented substantially as in the following diagram, in which the land of the plaintiff is marked with his name; the and reserved by the defendants, after setting off Boylston Square, out of the lot conveyed to them by Reed and Dyer on April 18, 1809, is marked with the figure 1, and the land afterwards acquired by them with the figure 2; and the position of the proposed structure is designated by dotted lines. The distance from Washington Street to the corner of Boylston Square was represented as two hundred feet, and of that corner from Boylston Street one hundred and twenty feet.

Schwoerer *v.* Boylston Market Association.

The case was reserved, on the pleadings and this offer of proof, for the consideration of the full court; the bill to be dismissed if it could not be maintained thereon, but if otherwise, the case to stand for hearing; and was argued in March 1867.

*J. D. Ball*, for the plaintiff. The deed of 1809 created in favor of all the adjoining land of Reed and Dyer a perpetual servitude in Boylston Square. *Parker* v. *Nightingale*, 6 Allen, 341. *Hubbell* v. *Warren*, 8 Allen, 173. *Whitney* v. *Union Railway Co.* 11 Gray, 359. This servitude was not merely a right of way, but was a use in common for all purposes. It was expressly provided that no fence or building should be erected on the Square. The circumstances and condition of things then existing show that Reed and Dyer required something more than a mere right of way. They owned a large and valuable tract of land adjoining the defendants, extending to a distance from Washington and Boylston Streets. They could in no way get a frontage for their rear land, except by laying out an open area on their own land, or procuring one to be laid out over the defendants' adjoining land. It cannot be supposed that either party then thought that the subject of the purchase and grant was a mere right of a way which might be covered or built over

at any time.  A large sum of money was paid for the deed.  Its language is comprehensive and unrestricted.  If the defendants have a right to erect the particular structure in question, they may build up to the plaintiff's house.  The plaintiff can have no adequate remedy at law for an injury like this.

*R. F. Fuller,* for the defendants.  The object of the deed was plainly stated to be to lay out a passage.  This object throws light on the meaning of the language of the granting part of the deed.  That part provides that no fence or building shall be erected *on* the land.  The various conditions are such as the law annexes to the use of a way.  *Prescott* v. *White,* 21 Pick. 341.  The grantees are to make a sidewalk and keep it in repair.  The structure complained of does not rest on the soil; but is suspended like a bridge between the buildings on both sides of Boylston Square.  There is no averment that sufficient room is not left for all manner of vehicles to approach the plaintiff's house.  The prospect can only be slightly impeded.  But, by the true construction of the deed, no right of prospect is granted thereby.  And rights of prospect in cities are not favored by the policy of the law.  *Parker* v. *Foote,* 19 Wend. 309, 318.  The structure does not impair the right of passage.  The defendants retained all rights not necessary and convenient for the purposes of the grant; including the right of erecting a structure like that now contemplated.  *Atkins* v. *Bordman,* 2 Met. 457, 467, 468, 474.

FOSTER, J.*   The deed from the Boylston Market Association to Reed and Dyer, under which the plaintiff's title is derived, grants to them and their heirs and assigns, as to all that part of the association's land which is the passageway now in dispute, the right that it " shall not be subject to have any fence or building erected thereon."

In the opinion of the court, this language requires that the entire space of the passageway shall be kept open and unobstructed by any building.  It is not the case of a mere right of way where the owner of the soil may do any acts which do not

---

* GRAY, J., did not sit at the argument.

interfere with the enjoyment of the easement; but it is a right to have the entire court or passageway kept open to the sky. This may be beneficial to the plaintiff's estate, not only as a way, which was doubtless the chief use contemplated by the parties to the deed, but also for light, air and prospect, and every other accommodation and advantage which such an open court might furnish to an estate abutting upon it.

We cannot distinguish in this case between the obstruction of a building on the ground and one fifteen feet above. Either would for many purposes injure every estate on the passage. It is plain that dwelling-houses or other buildings on a court in a city are more valuable where the court is not arched or built over at its mouth, than where it is entered by passing under cover of a building. The right to have the entire space kept open and not built upon is one that equity will protect; and the

*Case must stand for trial.*

After this decision, the case was referred to a master to take and report the evidence, upon whose report and the pleadings the case was submitted to the full court for final determination at the present session.

The testimony reported related, 1. to the completion of the structure; and 2. to the relations of the defendants with Buckley & Bancroft, a copartnership with which it appeared that prior to the filing of the bill the defendants made the contract mentioned in their answer as requiring the erection of the structure complained of. The substance of all which is material on these points is stated in the opinion. It further related, 3. to the plaintiff's title under the mesne conveyances of his lot from Reed and Dyer; and on this point it appeared that in several of the deeds, (including the deed of May 1, 1857, from Jacob Sleeper to the plaintiff,) no express reference was made to Boylston Square except as a boundary, nor to any rights therein as appurtenant to the granted premises except as included under such a general phrase as " with all the rights, easements, privileges and appurtenances thereto belonging." Finally, the testimony reported related, 4. to the question whether there had been

a forfeiture of the plaintiff's rights, if any, by noncompliance with the provisos of the defendants' grants, or whether any neg-lect in that respect had been waived by the defendants ; and 5. to the question whether the defendants had not obtained by pre-scription a right to maintain the structure over Boylston Square, by reason of the previous maintenance of certain large sign-boards in substantially the same position.

*J. D. Ball,* for the plaintiff.

*P. W. Chandler & R. F. Fuller,* for the defendants.

COLT, J. Upon the plaintiff's offer to prove the facts stated in his bill, it was held at a former hearing that the deed from the defendants to Reed and Dyer, under whom the plaintiff claims title to a part of the land adjoining the strip or passage-way therein described, conveyed the right to have the passage kept open to the sky ; and that this bill might be maintained to prevent the erection of a building or suspended bridge over it, though supported by the adjoining buildings solely, and leaving a passage fifteen feet high under the same.

Under this decision, the parties proceeded to take evidence in support of the allegations in the bill and answer. It now ap-pears that on July 1, 1866, the defendants entered into a contract with Buckley & Bancroft, by which they agreed to lease to them for a term of years the premises adjoining said strip on both sides thereof and fronting on Washington Street, to put the same in good tenantable condition, to construct at their own ex-pense a covered way or bridge four or five feet wide across said passageway, and to permit Buckley & Bancroft to put up a counting-room on the east side thereof at their expense, if they should choose to do so ; Buckley & Bancroft on their part agree-ing to take possession of said premises as soon as they should be made ready for occupancy, and to sign and execute leases of the same on the terms therein set forth.

This bill was filed September 12, 1866 ; and on the first of November following a lease of the premises named in the con-tract of July 1, together with the counting-room and passage-way, which had then been erected, was executed. The structure extending across the twenty feet strip or way was one story

high, covering the same for a distance of twenty-six feet back from Washington Street, and leaving a space under it fifteen feet high.

Upon this state of facts, it is claimed that this bill must now be dismissed for want of necessary parties; and that Buckley & Bancroft should have been made defendants. As a general rule, in equity proceedings, all persons materially interested must be made parties either plaintiff or defendant, in order that a complete and final decree may be made, and a multiplicity of suits prevented. An objection to the nonjoinder, if deemed necessary by the defendant to his own protection, and when apparent on the face of the bill, is taken by demurrer, or otherwise by plea or answer setting forth the facts by which other persons named therein are made necessary or proper parties. If the defendant does not for any reason think fit to take the objection before, the defect may be availed of, to a limited extent, at the final hearing upon the pleadings and proof. But, when thus delayed, the objection receives far less favor from the court, and its allowance is said to depend to some extent upon sound discretion. If there be an omission of an indispensable party, so that a complete decree cannot be made without him, the court will itself, *ex mero motu,* take notice of the fact, and direct the cause to stand over, in order that such new party may be added; or dismiss the bill, when the plaintiff is chargeable with laches. In such cases, it must appear that the decree will have the effect of depriving the party omitted of his legal rights. Where the defect is formal and technical merely, and is only objected to at the hearing, and especially if other parties are needed only for the defendant's protection, the decree will not be delayed if the nonjoinder produces no other prejudice to the rights of parties before the court. It is the familiar rule that some defences cannot be made in all stages of the cause with equal effect, but will be regarded as waived when expense and delay have been incurred which might have been avoided.

In this case, we are of opinion that there is no rule governing courts of equity, in administering the relief peculiar to their jurisdiction, which requires us to delay final relief on account

of the nonjoinder of Buckley & Bancroft. At the time of the filing of this bill they were only parties to a contract with the defendants, one stipulation of which was that the defendants should erect a structure over the passageway in question for their future use in connection with premises agreed to be leased. They then had no legal interest in the proposed building; were not at that time concerned in its erection ; and the plaintiff then had no knowledge of the contract. Their rights are to be settled under this executory contract. The fact that they afterwards became lessees in pursuance of its terms does not affect the question. All leasehold or other titles acquired *pendente lite* are affected with notice; and parties claiming such titles need not be joined, but are bound by the decree. It is plain that the defendants' contract with third persons to erect a building for their future use in a place where they have no right to build does not imperatively require that such third parties should be made defendants, in a bill brought for its removal before they have taken possession and entered upon its use, and when the objection of nonjoinder is first made at the hearing. However proper it may have been to have joined them originally, they are not now indispensably necessary. Their legal rights are not affected by the decree, but remain unimpaired, if they have any, under the contract. They are not required to be joined on the ground that no effectual decree can be made against them; be cause a decree ordering the removal of the obstruction will afford adequate and complete relief, and can be enforced without naming them or requiring any act on their part.

The statement in the answer, of the existence of a contract in general terms for the erection of this structure, without stating it to be in writing, or with whom or where made, or that it was made before the filing of the bill, is to be regarded rather as an inducement to the defendants' claim of injury, and is not, as suggested, a proper mode of raising the objection of a want of parties. A general demurrer with nothing in the bill to disclose the defect of course cannot aid the defendants.

There is another rule often laid down which leads to the same result. In a suit brought against a party whose title to real es-

tate is disputed, the occupying tenants or lessees claiming pos-
session under him are not deemed necessary parties, upon the
ground that their rights are in some sort represented and so far
protected. Story Eq. Pl. § 151.

The further objection, that the other persons who have become
owners of lands adjoining the passageway, and who have the
same privileges, are not joined, cannot prevail, for the reason
above stated; and for the further reason that such owners have
distinct and several interests. The rule requiring all parties
having a community of interests to be joined, or proper reason
shown for the nonjoinder, does not apply, even if that rule would
be enforced when the defendant does not suggest the defect in
his pleading. The remedy applied will obviate the need of any
further litigation by other parties having similar rights. 1 Dan.
Ch. Pr. (3d Am. ed.) 305, note. Story Eq. Pl. §§ 74 *a*, 116 note,
279, 534, 535. *Townsend* v. *Auger*, 3 Conn. 354.

It is further claimed that the plaintiff fails in his evidence to
show any title, under the grant to Reed and Dyer, to demand
the removal of the obstruction. By acquiring title to the prem-
ises occupied by him bounding on the passageway, he became
entitled to the use of the way, by virtue of the original grant as
therein defined, as appurtenant to his estate, even though the
words privileges and appurtenances had not been added in his
deed. To ascertain the extent and character of the incorporeal
right to which he thus acquired title, resort is had to the terms
of the original grant. The agreement not to make erections in
the passageway was not, it is true, technically a covenant run-
ning with the land. There can be no covenant running with the
land, it is said, where no land, but only an incorporeal heredita-
ment, is granted. *Hurd* v. *Curtis,* 19 Pick. 459. But this is not an
action upon the covenant. The defendants had the right to put
such restrictions and limitations upon their own estate, in favor
of adjoining estates, in granting this right of way, as they chose.
And courts of equity, in determining the rights of the parties,
will ascertain the intention by all the provisions and stipulations
made. Between the original parties only, the agreements and
stipulations may be enforced at .aw. But in equity those claim-

ing title under them may resort to the whole instrument, in-cluding the covenants and agreements in gross, for the purpose of ascertaining the nature of the right intended to be conveyed; and, when ascertained, the court will enforce, in favor of such persons, that use or mode of enjoyment which the grantor has seen fit to impress upon it. The effect of a grant will thus be given to that which is in the form of an agreement binding at law only between the original parties. *Whitney* v. *Union Railway Co.* 11 Gray, 362. *Parker* v. *Nightingale*, 6 Allen, 344. *Hubbell* v. *Warren*, 8 Allen, 178. *Underwood* v. *Carney*, 1 Cush. 285. 1 Smith Lead. Cas. 27, note. *Hills* v. *Miller*, 3 Paige, 254. *Watertown* v. *Cowen*, 4 Paige, 510. *Hooper* v. *Cummings*, 45 Maine, 364 *Willard* v. *Henry*, 2 N. H. 120. *Sharon Iron Co.* v. *Erie*, 41 Penn. State, 342.

Two other grounds of defence remain to be considered. It is contended that the defendants' grant was upon conditions which the grantees have failed to perform; or at least that the stipulations in regard to sidewalks, paving and repairs, were covenants which have been broken; and so that the plaintiff has no equity to demand the relief he seeks. The answer contains no allegation that the easement was granted on conditions, precedent or subsequent, by failure to perform which the rights described never vested or were subsequently forfeited. Such a defence, if sustained, would of course involve a forfeiture of the entire easement, including the passageway. The whole defence is inconsistent with such a result. The answer proceeds on the ground that the structure erected by the defendants is consistent with the right of passageway which the plaintiff claims, and which it is not distinctly denied that to some extent he possesses; and much of the evidence is directed to sustain the position.

The words "provided that" and "provided also" do not always constitute a condition, and the question whether there be a condition, as well as whether it be precedent or subsequent, is to be determined by ascertaining the intention of the parties from the whole language used, and the nature of the act required. When for the purpose of its fulfilment it implies that the grantee is to have possession and control of the premises, it

is ordinarily construed to be a condition subsequent. *South Congregational Meeting House in Lowell* v. *Hilton*, 11 Gray, 409. But upon a full consideration of the evidence we do not find it necessary to place the decision upon any alleged insufficiency of the pleadings, or any careful construction of the terms of the alleged condition. The lapse of time, the acts and conduct of the defendants, preclude them from availing in this case of any past breaches of the stipulations in reference to sidewalks, paving and repairs. It is clearly competent to prove a waiver of the strict performance of the stipulations or conditions, by parol evidence of the acts and declarations of the parties. *Leathe* v. *Bullard*, 8 Gray, 545. [Here followed, in the opinion, a summary of the evidence on the question of waiver, which is omitted, as it included no discussion of points of law.] We are satisfied that a literal compliance with the provisions of the grant now insisted on has been waived and dispensed with, to this time at least, by the defendants. *Merrifield* v. *Cobleigh*, 4 Cush. 178. *Hadley* v. *Hadley Manufacturing Co.* 4 Gray, 140. *Ludlow* v. *New York & Harlem Railroad Co.* 12 Barb. 440.

And finally, in regard to the alleged right by prescription to maintain the erection, the evidence fails to satisfy us that such right was acquired by the defendants. [Here followed a similar summary of the evidence on the question of prescription, which is omitted for the same reason.]

All the evidence satisfies us that the present structure is a substantial damage to the plaintiff's estate; and a decree must therefore be entered directing its removal, with a perpetual injunction against its future erection, and with costs for the plaintiff.