TOWN OF SEEKONK *vs.* JOHN J. McHALE & SONS, INC. & others.

Bristol.    October 24, 1949. — February 6, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Zoning.    Constitutional Law,* Zoning.    *Seekonk.    Equity Pleading and Practice,* Parties.

Excavation and removal by a contractor of sand and gravel from a tract of land in a residence zoning district in Seekonk, found to constitute a use of the tract as a sand and gravel pit and not to be for the purpose, as recited in a contract between the landowner and the contractor, of changing the grade of the tract to conform to the grade of adjacent properties previously excavated or for the purpose of adapting the tract for residential uses, was a violation of a provision of the zoning by-law of the town forbidding use of premises in such a district "for any purpose except" certain specified purposes not including such a pit.

A provision of a zoning by-law, construed as forbidding use of premises in a residential countryside as a sand and gravel pit, was not unconstitutional.

In a suit in equity by a town against a contractor to enjoin excavation and removal of sand and gravel from a certain tract of land as in violation of the town's zoning by-law, reversal of a decree for the plaintiff was not required by the fact that the landowner, who had made a contract with the contractor for such excavation and removal, was not a party to the suit: the landowner, although a proper party, was not an indispensable party.

BILL IN EQUITY, filed in the Superior Court on December 22, 1948.

The suit was heard by *Kirk*, J.

*A. E. Seagrave*, for the defendant John J. McHale & Sons, Inc.

*G. M. Owen*, for the plaintiff.

Qua, C.J. The town is seeking to enforce against the defendants a provision in its zoning by-laws forbidding the use of "premises" in a "residence A district" "for any purpose except" certain enumerated purposes which do not include use as a gravel pit. The trial judge entered a decree enjoining all the defendants from excavating or stripping sand, gravel, and other materials from the land. The defendant corporation alone appeals. The evidence is reported.

It is exceedingly difficult to understand the evidence or even to delimit the land in question for the reason that the greater part of the testimony was given with reference by means of gestures to plans and to large photographs of areas of countryside apparently taken from the air. The witnesses pointed "here" and "there" to "this" and "that" but failed to describe or identify in words the places and objects meant. Much that must have been perfectly clear to the trial judge is unintelligible to us. Findings of the facts now to be stated would have been supported by evidence or judicial knowledge and on such a record as we have before us could not be pronounced plainly wrong. The land is a tract of considerable size, with few, if any, buildings, in a residence A district. It is level and is located in a generally level country of residences and farm lands near the Rhode Island line in the vicinity of the city of Providence. It is owned by Eureka Realty Company, Inc., not a party to this suit. Adjoining or in close proximity to the tract on two sides are large, bare, sunken areas, the results of former diggings for gravel. Under date of December 6, 1948, the corporate defendant, which was engaged in building roads and waterways, entered into a contract with Eureka Realty Company, Inc., wherein it was recited that the Eureka company was desirous of lowering the grade of a portion of its land "to more nearly

conform to the level of adjoining properties," and wherein the corporate defendant agreed to change the grade of the Eureka company's land "to conform to the direction and wishes" of that company, to receive and pay at four cents a yard for all material excavated except loam or topsoil, and to slope the excavated portion so as to make easy and gradual access thereto, "using the loam and topsoil as cover," all the work to be completed within one year. Shortly after the date of the contract the corporate defendant began pushing aside the loam and topsoil and excavating the gravel which it carried to a processing plant in the vicinity operated by a partnership in which two of the individual defendants were partners.

The appealing defendant contends that the work being done was, in substance, simply the grading of the Eureka land to slope it to the level of the adjoining excavations and make it more adaptable for building. But the judge did not take that view. He found that "the undertaking here is to abstract sand and gravel from the land, and in so doing it is not to establish a grade to make it adaptable for residential purposes, but rather to take sand and gravel and destroy what is already adapted for residential purposes," in other words to use the premises as a source of supply for gravel. There was evidence tending to show that the Eureka land was already, in its natural state, at the level of the surrounding country, except the pits previously dug, and that the digging which was being done would merely cause it, or a substantial part of it, to be added to the sunken and wasted areas of the other pits. There was no evidence of any contemplated building on the land. The judge was not required to believe that improvement of the land was the purpose or would be the result, or that the loam and topsoil would ever in fact be restored. He could believe a witness who testified that "It isn't a case of digging into a bank, simply, it is a case of digging a hole in the ground." The finding was not plainly wrong. On the evidence and finding the case is

not one of an owner trying to grade his land for a permitted use, but is one of an owner turning its land over to a contractor for a gravel pit — a forbidden use.

The appealing defendant further contends that the zoning by-law is unconstitutional if it prevents the owner from removing a natural product from his land. But all zoning restricts an owner in the uses he could otherwise make of his property. There seems to us to be no difference in principle whether the restriction takes the form of preventing the owner from building a factory or from establishing a gravel business. In either case the question is whether the by-law as applied in the particular instance is a reasonable regulation of the use of the property in the public interest or an unreasonable and arbitrary interference with property rights. In the present instance no peculiar and unreasonable hardship appears such as was held decisive in *Nectow* v. *Cambridge*, 277 U. S. 183. Protection of a residential countryside against huge gravel pits is not unreasonable. The case on this point is governed by *Burlington* v. *Dunn*, 318 Mass. 216, 220–223, certiorari denied sub nomine *Dunn* v. *Burlington*, 326 U. S. 739. Many of the cases are collected in that decision. See *Wilbur* v. *Newton*, 302 Mass. 38; *Lexington* v. *Menotomy Trust Co.* 304 Mass. 283; *Saugus* v. *B. Perini & Sons, Inc.* 305 Mass. 403, 407; *Billerica* v. *Quinn*, 320 Mass. 687.

It is suggested rather than argued that the Eureka company as owner of the land should have been made à party. With this we incline to agree. But we do not consider the landowner an indispensable party so that the decree should be reversed when the question is raised at this stage of the case for the first time. The decree in no way affects the title to the land and is not binding upon the landowner as to what use it can make of the land. The decree affects the Eureka company only indirectly and collaterally in so far as it interferes with the carrying out of the contract. In the circumstances we think this is not a case where it would be inconsistent with equity and good conscience to allow the decree to stand. *Schwoerer* v. *Boylston Market Associa-*

*tion,* 99 Mass. 285, 294–296. *Jewett* v. *Tucker,* 139 Mass. 566, 578–579. *Evans* v. *Wall,* 159 Mass. 164, 168. *Warecki* v. *United States Fidelity & Guaranty Co.* 270 Mass. 233, 235–236. *Manfredi* v. *O'Brien,* 282 Mass. 458, 460–462.

*Decree affirmed with costs.*