PROFFETT et al.

v.

VALLEY VIEW VILLAGE, Inc. et al.

Civ. No. 29974.

United States District Court,
N. D. Ohio, E. D.

Nov. 16, 1953.

Irwin Greene, Cleveland, Ohio, for plaintiff.

Horan & Bell, Cleveland, Ohio, for defendants Valley View Village and William Rosser.

David J. Miller, Cleveland, Ohio, for defendant Schmidt Bros. Sand & Supply Co.

McNAMEE, District Judge.

Plaintiff will be referred to herein as Proffett, defendants, the Village of Valley View and its Building Inspector as the Village, and the Schmidt Sand & Gravel Company as Schmidt.

Proffett is the owner of 44 acres of land situated in Valley View Village, with a frontage of about one thousand feet on Tinkers Creek Road. The land rises over 100 feet from a point near the roadway to a plateau upon which there is located about thirty acres of level land. These thirty acres are a part of a tableland which includes many acres of other properties extending in three directions for a considerable distance from plaintiff's property. There are no houses located upon the tableland. The Village of Valley View lies about eight miles southeasterly of the City of Cleveland. It is small

in area and sparsely populated. Its population in 1930 was slightly over 500 and in 1950 was 998. It is entirely without the customary municipal facilities of water and sewers and has no sidewalks. Septic tanks are the only means of disposing of sewage, and water is obtained from wells. The Cuyahoga River and the Ohio Canal flow through the westerly portion of the village. Railroads are located near both its easterly and westerly boundaries. As its name implies, the Village is located in a valley, but a considerable part of the property within the village consists of elevated lands lying on top of the hills that surround the valley. In the year 1932 the village adopted zoning ordinance No. 131. The ordinance provided for the immediate establishment of but one use district. All the property in the village was restricted to the principal and accessory uses permitted by the U-1 or single residence classification. Provision was made for the granting of permits and variances by the Building Inspector and the Zoning Board of Appeals, and violations of the ordinance were subject to punishment as misdemeanors. The evidence discloses that with its mineral content the thirty acres of plaintiff's land has a value of $1,500 per acre, while its value as undeveloped land for residential purposes is less than one-fifth of that amount.

In 1950 Proffett entered into a combination lease and contract with Schmidt by the terms of which the latter was granted the right to extract sand and gravel from Proffett's property for a period of five years with an option for a renewal for a like period in consideration of the payment of a royalty of ten cents per ton, with provision for a minimum payment of $2,000 annually. Later in the year Proffett was granted an oral permit for a two-year period to remove sand and gravel from the thirty-acre portion of his property. Upon expiration of the two-year period excavation was continued by Proffett until he was ordered to cease operations by the village officials. Thereafter an application for another permit was made and denied. In January, 1953

Proffett together with Schmidt again made application to the Building Inspector for a permit, and this application was also denied. Proffett then appealed to the Zoning Board of Appeals, which upheld the action of the Building Inspector. Shortly thereafter this action was commenced.

Plaintiff seeks an order restraining the Village from interfering with his removal of sand and gravel from the property. An application for a temporary restraining order was denied by this court, and plaintiff sought, unsuccessfully, in the Court of Appeals and in the United States Supreme Court to enjoin the Village from interfering with his removal of the mineral deposits pending the determination of the case on the merits. However, in May, 1953 Proffett again resumed removal of sand and gravel from his property. Thereafter, on application of the Village, this court issued an order restraining plaintiff from making further excavations pending final determination of this case.

The foregoing events occurred during the period that ordinance No. 131 was in force. On June 2, 1953 the Village adopted zoning ordinance No. 53–5–1. This ordinance repealed ordinance No. 131. However, it is agreed that plaintiff's rights are controlled and governed by ordinance No. 131. Plaintiff alleges that the ordinance is void and unconstitutional as being in violation of Section 10 of Article I of the United States Constitution and the Fifth and Fourteenth Amendments thereto and Article 1, § 19, of the Ohio Constitution. Plaintiff assails the validity and constitutionality of the ordinance on several grounds but levels his main attack upon the alleged failure of the Village to comply with the provisions of the enabling statutes of Ohio. The claims that the purpose of the ordinance is not clearly expressed in its title and that there was no publication of the ordinance after its adoption, are without merit. Nothing developed at the trial that warrants any change in the opinions expressed by the court on these two points in overruling plaintiff's applica-

tion for a preliminary injunction. Nor is there any basis for the claim that the Planning Commission of the Village failed to certify the plan of zoning to the village council as required by law. The fact that the Planning Commission made findings and submitted recommendations to the council is recited in the preamble to ordinance No. 131 and no evidence has been offered to refute the verity of this recitation.

Plaintiff contends that the ordinance is void because of the failure of the council to divide the municipality into zones or districts as required by Section 4366–7 et seq. of the General Code of Ohio. Inasmuch as the Village is not governed by a municipal charter, a determination of the validity of this claim requires an examination of the ordinance and the controlling statutes of Ohio. Section 2–(a) of the ordinance provides:

"Section 2–(a) Districts. For the purpose of this ordinance there is hereby created in the Village of Valley View five classes of Use Districts and three classes of Area Districts. *Nothing herein contained, however, shall require the immediate designation of all of the above districts upon the zone map, it being the intention to provide for said districts and to permit from time to time the creation and designation of said districts as the needs of the community may require.* Said districts, however, when established by proper legislation and designation upon the zoning map shall conform to all provisions with reference to said districts hereinafter described." (Emphasis supplied.)

Section 3 of the ordinance provides for five use classifications and three area classifications and specifies the regulations applicable in each. Although the U–2, U–3, U–4 and U–5 districts and the three Area districts are defined and the restrictions and regulations appertaining thereto are set forth in detail, the ordinance does not divide the municipality into districts or zones. Pursuant to the purpose expressed in Par. 2–(a) of the ordinance the entire village was placed in the U–1 district. The establishment of the other use and area districts was deferred until such time "as the needs of the community may require." Section 2–(b) incorporates the zoning map as a part of the ordinance. However, the original zoning map contained no delineation of districts or zones. It is merely a map of the village described by the defendant as one "which by white legend classified the entire village as a U–1 district." While thus conceding that the ordinance established but one district comprising the entire village, defendant contends that this was a compliance with the statutes governing zoning. It is urged that the ordinance was designed to preserve the residential and agricultural character of the village "while at the same time providing for future growth and development." Defendant argues that "There was no need, demand or call for other purposes and therefore no basis upon which to establish other types of districts." However, the State enabling act in express terms provides for the division of the municipality into zones or districts. Section 4366–7 G.C., which defines the powers of a city planning commission and confers like powers upon the planning commission of a village, provides in part as follows:

"The * * * planning commission * * * shall have the power to frame and adopt *a plan or plans for dividing the municipality or any portion thereof into zones or districts,* representing the recommendations of the commission, in the interest of the public health, safety, convenience, comfort, prosperity or general welfare, for the limitation and regulation of the height * * area", etc. "and the uses of buildings and other structures and of premises in such zones or districts." (Emphasis supplied.)

Section 4366–8 G.C., which governs the location of buildings and structures, provides *inter alia:*

"Whenever the * * * planning commission * * * certifies to the

council \* \* \* *any such plan for the districting or zoning of the municipality* \* \* \* then said council \* \* \* may regulate and restrict the location of buildings", etc. " \* \* \* and for said purposes divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this section." (Emphasis supplied.)

Section 4366–9 G.C., which applies to regulations relating to the height of buildings and structures, contains identical language with respect to the certification by the planning commission of a plan for the districting and zoning of the municipality.

Section 4366–10 G.C. also contains provisions identical with or similar to those to be found in Sections 4366–8, 4366–9.

■■■ The foregoing sections of the General Code of Ohio define the powers of a municipality to enact the zoning ordinance. In clear and unambiguous terms the statutes require that zoning shall be accomplished by a division of the municipality into zones or districts. Ordinance No. 131 did not accomplish this result. It imposed U–1 restrictions upon the entire village and attempted to provide for the future establishment of zones and districts if and when the need therefor arose. This was not a zoning of the village. It was a plan for zoning. Zoning means a division of a municipality into zones or districts and the imposition of structural and use restrictions within the established zones or districts. 58 Am.Jur. 940, Sec. 1; 62 C.J.S., Municipal Corporations, § 226(1), page 417 et seq., and cases there cited. Municipalities have no inherent power to enact zoning ordinances. Such power must derive from constitutional or statutory authorization, and when the power is granted by statute, its exercise is confined by the limitations of the enabling act.

"The clearly expressed provisions of a zoning enabling statute may not be abrogated, ignored or relaxed to meet the real or supposed needs of a municipality or its inhabitants." 1 Am.Jur. 943, note 13; 117 A.L.R. 1123.

The Village advances the argument that the statutes vest discretion in the council to determine the number, shape and area of districts best suited for the municipality and that there is no statutory requirement that more than one district be established. This argument overlooks the fact that the powers conferred on the planning commission and the councils of municipalities clearly contemplate a division of the municipality into zones or districts. Here there was no such division.

Defendant cites Dowsey v. Village of Kensington, 257 N.Y. 221, 177 N.E. 427, 430, 86 A.L.R. 642, as being a case where the Court of Appeals of New York "did not find fault with the idea of one-district zoning." A careful reading of the Dowsey case discloses that while nearly all the village was placed in a single residence district, there was a small portion reserved or zoned for business and industry. This is apparent from the following statements of the court:

"The village of Kensington is small in area, and the board of trustees have not attempted in the zoning ordinance to segregate in appropriate places within the village all the activities of communal life. They have relegated business and industry to a very small section which the evidence shows is not adapted to business, and have excluded from the main portion of the village even residences excepting one-family detached houses."

Nor is Duffcon Concrete Products, Inc., v. Borough of Cresskill, 1949, 1 N.J. 509, 64 A.2d 347, 9 A.L.R.2d 678, a case involving a single zone. The ordinance there in question divided the territory of the municipality into residential and commercial districts and prohibited the use of property in the latter for heavy industry. Exhaustive research has failed to disclose any case where the inclusion of an entire municipality in a single use district has been upheld by the courts.

██ The power of a municipality to enact a zoning ordinance is an exercise of the police power of the State in the interest of the public health, safety, convenience, prosperity or general welfare. The police power, however, is based upon public necessity. City of Youngstown v. Kahn Bros. Bldg. Co., 112 Ohio St. 654, 148 N.E. 842, 43 A.L.R. 662. And, as stated by the Supreme Court of Ohio in the leading case of Pritz v. Messer, 112 Ohio St. 628, at page 639, 149 N.E. 30, at page 33:

"If the ordinance discloses no purpose to prevent some public evil or fill some public need, and has no real or substantial relation to public health, morals, and safety, it must be held void."

Ordinance No. 131 discloses no purpose to subserve a public need or to prevent a public evil. On the contrary, the language of Section 2–(a) of the ordinance, which expresses the intention "to provide for said districts and to permit from time to time the creation of said districts as the needs of the community may require," negates the existence of any necessity for the exercise of the police power by the adoption of the ordinance. Defendant's argument that "there was no need nor any basis upon which districts could be established," confirms the absence of such necessity.

██ The ordinance was amended in 1941 and 1947, but these amendments did not establish a zone or district within the village. In 1946 the ordinance was amended to establish a U–5 district for business and industry. The amendment provided for the designation upon the zoning map of such U–5 district. The new district was not placed upon the zoning map until 1950. There was no publication of the amendment of 1946. Of course this amendment had no retrospective application, nor was it effective to validate ordinance No. 131 as of the date of the amendment. It is held, therefore, that ordinance No. 131 discloses no purpose to prevent a public evil or to subserve a public need; that the ordinance had no substantial relation to the public health, safety, convenience, comfort, prosperity or general welfare, and that the failure of the ordinance to establish zones or districts within the municipality and the inclusion of the entire village in one use classification was an exercise of power not conferred upon the municipality by the zoning enabling act of Ohio, and that said ordinance is void.

The foregoing determination obviates the necessity of examining plaintiff's additional claims that the ordinance is arbitrary and unreasonable, both in its entirety and in some of its parts and as applied to plaintiff's property. These claims present questions which, in view of the holding here made, it is unnecessary to decide.

██ There remains for consideration the claim of the defendant that plaintiff is precluded from asserting the invalidity of ordinance No. 131. It is urged that by making application for and obtaining permission to excavate in 1950 and seeking a renewal of the permit in 1952 and a new permit in 1953, plaintiff "recognized and accepted" the classifications under the ordinance and cannot now contest its validity. In support of this argument defendant cites and relies upon cases decided by the courts of Connecticut and Rhode Island. The principle upon which these cases rest is stated in Chudnov v. Board of Appeals, 113 Conn. 49, 154 A. 161, 164, as follows:

"The final point urged is that if, as we have held, the use proposed by the appellant does not constitute 'farming' and therefore is not permitted in the residence zones, the regulations are unconstitutional. The appellant having recognized and utilized the regulations by proceeding under them, it is not open to him to attack them, in this action, as unconstitutional and invalid."

To the same effect are Sweck v. Zoning Board of Review, 77 R.I. 8, 72 A.2d 679; Lathrop v. Town of Norwich, 111 Conn. 616, 151 A. 183; Holley v. Sunderland, 110 Conn. 80, 147 A. 300; Piccolo v. Town of West Haven, 120 Conn. 449, 181 A. 615; Allen v. Zoning Board of Review, 75 R.I. 321, 66 A.2d 369. It appears, however, that under the laws of

Connecticut and Rhode Island the cited cases were considered and treated as appeals from and continuations of proceedings instituted before administrative boards. In commenting upon the Connecticut cases cited above, the annotator in 136 A.L.R. 1376 says:

> "That the doctrine of these cases would not be applicable to an independent proceeding brought to establish the invalidity of a zoning statute or ordinance is suggested in National Transportation Co. v. Toquet, 123 Conn. 468, 196 A. 344."

But in no event can the cases cited above be considered as controlling here. It is settled in Ohio that one who exhausts the administrative remedies provided by a zoning ordinance is not thereby precluded from later questioning its validity. State ex rel. Lieux v. Village of Westlake, 154 Ohio St. 412, 96 N.E. 2d 414. Nor is the principle that precludes a party from questioning the validity of the very power the exercise of which he asks the court to compel, applicable. While plaintiff complains of the arbitrary and unreasonable action of the Board of Zoning Appeals in refusing a permit, his cause of action as stated in the Complaint is grounded upon the claim that the ordinance is void and unconstitutional. He seeks a permanent injunction restraining the village officials from interfering with his removal of sand and gravel from his property. There is no evidence of waiver or estoppel in plaintiff's conduct prior to the commencement of this action. No conduct of the plaintiff has caused the village to change its position to its prejudice. In W. W. Cargill Co. v. Minnesota, 180 U.S. 452, at page 468, 21 S.Ct. 423, 45 L.Ed. 619, the Supreme Court expressed the view that the procurement of a license is not a recognition and acceptance of the invalid parts of a statute such as would require the licensee to comply therewith. Upon similar principle it must be held that the acceptance of a temporary permit under a void ordinance does not preclude the plaintiff from challenging the validity of the ordinance. The doctrine of estoppel has no application in those cases where compliance with a law is involuntary. Ordinance No. 131 contains penal provisions that prescribe punishment for a violation of its terms, and it cannot be said that plaintiff's applications for permits were not coerced by those provisions of the ordinance. A well recognized exception to the doctrine of waiver or estoppel to assert the invalidity of a law exists in these cases where the law is accompanied by penalties for failure to obey its provisions or is otherwise coercive. 11 Am. Jur. 771, Sec. 124. This exception was recognized and given effect in the recent case of Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So.2d 248, 14 A.L.R. 2d 680, where it was held that a liquor dealer, by applying for and accepting a license from the State Liquor Board, was not estopped to attack the constitutionality of the statute creating the Board and regulating the sale of liquor.

The ordinance does not in terms prohibit the excavation of sand and gravel from properties within the village. But such use of properties is not among those specified as permissible in a U–1 district. It would seem that notwithstanding the absence of an express prohibition against removal of sand and gravel, the exclusion of such use from those specifically authorized would, if the ordinance were otherwise valid, be effective to prevent the plaintiff from using his property for this purpose. Town of Lexington v. Menotomy Trust Co., 304 Mass. 283, 23 N.E.2d 559; Town of Seekonk v. John J. McHale & Sons, Inc., 325 Mass. 271, 90 N.E.2d 325. However, the ordinance being void, there was no effective restriction upon plaintiff's right to remove the mineral content of his property.

Reference should be made to the case of Village of Westlake v. Elrick, 83 N.E. 2d 646, 647, decided by the Eighth District Court of Appeals of Ohio. The cited case is not analogous on its facts but of interest here is the opinion expressed by the court that compliance with the zoning enabling act requires that a "municipality *must* be divided into zones or

346

districts of such number, shape and area as may be best suited to carry out the purposes of the zoning plan, in the interests of the public health, safety, convenience, comfort, prosperity or the general welfare." (Emphasis supplied.) This is in harmony with the views hereinabove expressed. The enabling act of Ohio confers upon municipalities wide powers to restrict and regulate the use of property within municipal boundaries. Being in derogation of the common law, the act must be strictly construed. It must be confined to those matters affirmatively and definitely referred to by its terms. 50 Am.Jur. 404, Sec. 388. Even though the rule of strict construction be not applied, a determination of a legislative intent by giving effect to the clear import of the language of the statute discloses no legislative purpose to empower municipalities to restrict the use of all private property within their boundaries by converting an entire municipality into a single use district.

A decree may be entered enjoining the Village and its officers from interfering with the removal of sand and gravel from the Proffett property, and dismissing the cross-petition of the Village.