**VALLEY VIEW VILLAGE, Inc., and William Rosser, Inspector of Buildings, Appellants,**

v.

**Henry A. PROFFETT, Grace Proffett, and The Schmidt Bros. Sand & Supply Company, Appellees.**

No. 12179.

United States Court of Appeals
Sixth Circuit.

April 23, 1955.

Richard S. Horan, Cleveland, Ohio, Richard G. Bell, Bedford, Ohio, and Ralph W. Bell, Cleveland, Ohio, on brief, for appellants.

Sidney D. L. Jackson, Jr., Cleveland, Ohio, Irwin Greene and Walter L. Greene, Cleveland, Ohio, on brief, for Henry A. Proffett and Grace Proffett.

Irwin Greene, Cleveland, Ohio, for Schmidt Bros. Sand & Supply Co.

Sidney D. L. Jackson, Jr., James P. Garner, Baker, Hostetler & Patterson, Cleveland, Ohio, on brief, for appellees.

Before MARTIN, McALLISTER and STEWART, Circuit Judges.

STEWART, Circuit Judge.

The question presented on this appeal is a novel one. Can a noncharter municipality in the State of Ohio validly adopt a zoning ordinance which puts the entire area of the municipality into a single use district? The trial court answered this question in the negative and enjoined the appellant municipality from enforcing such an ordinance so as to prohibit appellees' sand and gravel operations, D.C., 123 F.Supp. 339.

Appellant Valley View, Ohio, is a sparsely settled residential and agricultural village, situated about eight miles southeast of Cleveland. Approximately six miles long and three miles wide, the village was inhabited by some five hundred people in 1930 and by about a thousand in 1950. It is without most of the customary urban services and conveniences, such as sewers, waterworks, and sidewalks.

In 1932 the village council adopted Zoning Ordinance No. 131, together with a zoning map incorporated as part of the ordinance. Reciting that the village planning commission had made plans and submitted recommendations to the council, the ordinance established five classes of use districts and three classes of area districts. The ordinance further provided: "Nothing herein contained, however, shall require the immediate designation of all of the above districts upon the zone map, it being the intention to provide for said districts and to permit from time to time the creation and designation of said districts as the needs of the community may require. Said districts, however, when established by proper legislation and designation upon the zoning map shall conform to all provisions with reference to said districts hereinafter described."

The zoning map bore a marginal legend indicating that all areas shown in white constituted a "U-1" district. The legend showed various colors for the other four use districts, "U-2," "U-3," "U-4" and "U-5," but the entire area of the village was shown in white on the map, so that the entire village was in fact designated as a "U-1" district.

In the U-1 district property was restricted to the use of single dwelling houses, churches, schools, and social, recreational and welfare uses. Permissible accessory uses included offices of professional persons, home occupations for gain, farms, truck gardens, and nurseries.

The ordinance permitted the continuation of existing nonconforming uses of property, and provided for the granting of permits and variances by the village building inspector, and its zoning board of appeals.[1]

In 1947 appellees Grace and Henry Proffett acquired a tract of land of about forty-four acres in Valley View. In 1950 the Proffetts entered into "a combination lease and contract" with appellee The Schmidt Bros. Sand & Supply Company, by the terms of which the latter was granted the right to extract sand and gravel from the Proffett property for a period of five years, with an option for a renewal for a like period, in consideration of payment of a royalty of ten cents per ton, with provision for a minimum payment of $2,000 annually. Later in the year the Proffetts were granted an oral permit by the village for a two-year period to remove sand and gravel from their property. Thereupon The Schmidt Bros. Sand & Supply Company began building a road into the property, and about a year later commenced the excavation and removal of sand and gravel.

Upon expiration of the two-year period, these operations were continued without a permit until the excavation was stopped in 1952 by the village officials. Subsequently, applications were made for another permit, but these were denied by the building inspector, and his action was upheld on appeal by the zoning board of appeals.

Thereupon the Proffetts brought the present action in the district court, seeking to enjoin the village and its building inspector from preventing the removal of sand and gravel from the Proffetts' property, contending that the zoning ordinance was void, illegal, and violative of the Federal and Ohio Constitutions.

1. The ordinance was subsequently amended in certain respects not material to this case. In 1953 it was repealed upon the enactment of an entirely new zoning ordinance. The trial court held, however, and it is agreed by all parties on this appeal, that the appellants' rights are "controlled and governed by Ordinance No. 131."

After certain preliminary proceedings, the district court granted a permanent injunction against the enforcement of the ordinance by the village or its officers, concluding "That the Village Ordinance No. 131 of October, 1932, having zoned the entire area of the Village into a single use district, thereby failed to comply with the requirements of the State Enabling Act (Ohio General Code, Sections 4366–7, 4366–8, 4366–9 and 4366–10) and therefore had no substantial relation to the public health, safety, convenience, comfort, prosperity or general welfare, and the said ordinance, together with all amendments thereto, is therefore null and void." The court filed an opinion which it adopted as its findings of fact and conclusions of law.

The appellees also attacked the ordinance in the trial court upon the grounds that the subject of the ordinance had not been clearly expressed in its title and that it had not been published, as required by the law of Ohio. The trial court found these contentions without merit, and the appellees have renewed these attacks on this appeal. The record clearly supports the findings and conclusions of the district court on these questions, and we do not consider them further.

■ The appellees also argued to the district court that since the ordinance did not expressly prohibit the excavation of sand and gravel, these activities should be permitted even if the ordinance were held to be valid. This argument too is repeated upon this appeal. The trial court's conclusion was that "It would seem that notwithstanding the absence of an express prohibition against removal of sand and gravel, the exclusion of such use from those specifically authorized would, if the ordinance were otherwise valid, be effective to prevent the plaintiff from using his property for this purpose." We agree with that conclusion. Town of Lexington v. Menotomy Trust Company, 1939, 304 Mass. 283, 23 N.E.2d 559; Town of Seekonk

v. John J. McHale & Sons, Inc., 1950, 325 Mass. 271, 90 N.E.2d 325.

■ This brings us to the central question on this appeal, stated at the outset of this opinion. The trial court held that the ordinance was void because the village council, in failing to divide the village into more than one use district, had thereby failed to comply with the requirements of the Ohio enabling statutes. At the time of the enactment of Ordinance No. 131 the statutory provisions covering the zoning powers of Ohio municipalities were contained in Sections 4366–7 to 4366–10 of the Ohio General Code.[2]

For the purpose of the question in issue we need consider only the first two of these four sections. Section 4366–7 empowered a village to create a planning commission and empowered such a planning commission "to frame and adopt a plan or plans for dividing the municipality or any portion thereof into zones or districts, representing the recommendations of the commission, in the interest of the public health, safety, convenience, comfort, prosperity or general welfare, for the limitations and regulation of * * * the uses of buildings and other structures and of premises in such zones or districts." Section 4366–8 provided, "Whenever * * * the planning commission of any village appointed under the provisions of section 4366–7, certifies to the council or other legislative body of the municipality any such plan for the districting or zoning of the municipality according to the uses of buildings and other structures and of premises, then said council or other legislative body, in the interest of the promotion of the public health, safety, convenience, comfort, prosperity or general welfare, may regulate and restrict the location of buildings and other structures and of premises to be used for trade, industry, residence or other specified uses, and for said purposes divide the municipality into districts of

---

2. These provisions were substantially reenacted in Sections 713.06 to 713.09 of the Ohio Revised Code.

such number, shape and area as may be deemed best suited to carry out the purposes of this section."

The district court interpreted this language as requiring the village council to establish more than one zone in order validly to exercise its power to regulate the use of property within its boundaries. We do not so read the statutory language. Although any plan adopted by the planning commission under Section 4366–7 must apparently provide for the division of the municipality into more than one zone or district, there is no obligation upon the village council under Section 4366–8 to adopt the plan as submitted. Upon certification of a plan to the council by the planning commission Section 4366–8 gives the council power, in the interest of the promotion of the public health, safety, convenience, comfort, prosperity or general welfare to "*regulate and restrict* the location of buildings and other structures and of premises to be used for trade, industry, residence or other specified uses * * *." It further gives the council power to "divide the municipality into districts" in order to accomplish said purposes. Section 4366–8 is permissive. The municipality *may* regulate and restrict the use of property to carry out the purposes specified in the statute, and, for those purposes, it *may* divide its area into more than one zone or district. There is no requirement that in order to regulate and restrict it *must* divide the municipality into more than one district. That is the literal meaning conveyed by the statutory phraseology as we read it.

■ Any doubt as to the meaning of the Ohio enabling statutes would have to yield to the meaning we have ascribed to them in any event, we think, because of the home rule provision of the Ohio Constitution. Section 4366–12 of the Ohio General Code provided in part: "Nothing contained in the foregoing sections 4366–7 to 4366–11 inclusive shall be deemed * * * to impair or restrict the power of any municipality under Article XVIII of the Constitution of Ohio." Article XVIII, Section 3, of

the Ohio Constitution is the so-called home rule amendment, adopted in 1912. It provides: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

In a case decided soon after the adoption of this amendment the Ohio Supreme Court held that in order to avail itself of home rule power, a municipality must adopt a charter, as permitted by Section 7 of Article XVIII of the state Constitution. State ex rel. City of Toledo v. Lynch, 1913, 88 Ohio State 71, 102 N.E. 670, 48 L.R.A.,N.S., 720. That view did not long prevail. In Village of Perrysburg v. Ridgway, 1923, 108 Ohio State 245, 140 N.E. 595, the state Supreme Court expressly overruled the Lynch case doctrine and held that the home rule amendment was "self-executing" and that a municipal charter was accordingly not a prerequisite to the full exercise by a municipality of home rule powers.

The effect of the home rule amendment was stated succinctly in the court's opinion in the Perrysburg case, as follows: "Prior to 1912, all municipal power had been held by our courts to be by grant of the General Assembly. It was made in sections or segments by virtue of many statutes, the meaning and scope of them ofttimes being more or less uncertain and difficult. But in 1912 a new order was established with relation to municipal powers, by which the sovereign people of Ohio, through constitutional provisions (Section 3, Art. XVIII), made a broad blanket grant of 'all powers of local self-government' to all municipalities." 108 Ohio State at page 250, 140 N.E. at page 596.

■ That the regulation by a municipality of the use of property within its borders is within its powers of local self-government, and specifically within its police powers, is now too well-established to be questioned. The landmark Ohio case establishing this proposition was Pritz v. Messer, 1925, 112 Ohio

State 628, 149 N.E. 30, preceding by a year the decision of the Supreme Court of the United States in Village of Euclid, Ohio v. Ambler Realty Company, 1926, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303.

Judge Allen's opinion in Pritz v. Messer states: " * * * a majority of the court are of opinion that under the home rule provision of the Constitution (Article XVIII, Section 3) the regulation of the bulk, area, and use of buildings is a function of local self-government and that therefore the municipality is doubly empowered to enact legislation upon this subject, having been given such authority both by the Legislature and by the Constitution." 112 Ohio State at page 637, 149 N.E. at page 33.

■ There is certainly nothing in the home rule amendment itself which requires a village council to divide the village area into more than one district in order to regulate the use of property therein. The Legislature expressly provided that the enabling statutes should not be deemed "to impair or restrict the power of any municipality under Article XVIII of the Constitution of Ohio." Section 4366–12, Ohio General Code. We therefore conclude that the village of Valley View had power, under the statutes of Ohio and Article XVIII, Section 3, of the Ohio Constitution, to incorporate the entire area of the village into a single use district.[3]

■■ It is argued by appellees, however, that even though the village might have theoretical power to put all of its area into a single use district, an ordinance which attempts to do so must be held invalid because it is *per se* arbitrary and unreasonable. In considering that question we must recognize the presumption in favor of municipal legislation in a matter of exclusively local concern. Unless there is a clear and palpable abuse of power, a court will not substitute its judgment for legislative discretion. Allion v. City of Toledo, 1919, 99 Ohio State 416, 124 N.E. 237, 6 A.L.R. 426.

■ "It must be remembered that the question to this court is not one of municipal policy. It is simply one of municipal power. The wisdom or unwisdom of the policy is for the municipality's determination." Village of Perrysburg v. Ridgway, 1923, 108 Ohio State 245, at page 259, 140 N.E. 595, at page 599. "The courts in such cases have no right to determine whether the measures questioned are wise or the best that might have been adopted. The courts cannot hold such laws invalid upon the mere ground of inexpediency. In other words, the question of the reasonableness of this ordinance is one, in the first instance, for the determination of the council which enacted it." Pritz v. Messer, 1925, 112 Ohio State 628, at page 639, 149 N.E. 30, at pages 33, 34.

■ It is true that the traditional method by which a municipality exercises its power to regulate the use of the property within its borders is by the division of its area into several use districts. Yet we find in the cases to which we have been referred no express requirement of a division into districts in order to support the regulation and restriction of property. It was the power to regulate and restrict, not the power to divide, which was in issue in the early landmark cases. Cf. Village of Euclid v. Ambler Realty Company; Pritz v. Messer, both cited above. Not the number of districts provided, but substantial relationship to

---

3. We find nothing to the contrary in the recent decision of the Ohio Supreme Court in Morris v. Roseman, 1954, 162 Ohio St. 447, 123 N.E.2d 419. That case held that a noncharter municipality in Ohio, in the enactment of a zoning ordinance, must comply with statutory enactments with respect to the *procedure* to be followed in the passage of the ordinance. The specific statutory requirement there involved was the holding of a public hearing on the ordinance preceded by a thirty-day notice of the time and place of such hearing. In the present case the district court correctly concluded that the statutory procedure *was* followed, expressly finding that the subject of the ordinance was clearly expressed in its title and that the ordinance was published, as required by the statutes.

**418**

the public health, safety, morals or general welfare is the test.

 Traditional concepts of zoning envision a municipality as a self-contained community with its own residential, business and industrial areas. It is obvious that Valley View, Ohio, on the periphery of a large metropolitan center, is not such a self-contained community, but only an adventitious fragment of the economic and social whole. We cannot conclude as a matter of law that an ordinance which places all of the area of such a village into a residential district is *per se* arbitrary and unreasonable, with no substantial relation to the public health, safety, morals or general welfare. It would appear contrary to the very purposes of municipal planning to require a village such as Valley View to designate some of its area for business or industrial purposes without regard to the public need for business or industrial uses. The council of such a village should not be required to shut its eyes to the pattern of community life beyond the borders of the village itself. We think that it is not clearly arbitrary and unreasonable for a residential village to pass an ordinance preserving its residential character, so long as the business and industrial needs of its inhabitants are supplied by other accessible areas in the community at large.

[12] Situations in which the legislative body of a municipality would even desire to put its entire area into but one use district are no doubt rare. Situations in which such an ordinance would withstand constitutional attack with respect to the impact upon particular property within the municipality are perhaps even rarer. We conclude only that, if otherwise permitted by the Constitution and statutes of the state, a one-use ordinance is not necessarily so arbitrary and unreasonable as in every case to be invalid.

 A zoning ordinance may be generally valid, however, and at the same time be so arbitrary and unreasonable in its concrete application to particular

premises as to be invalid as applied to them. *Village of Euclid v. Ambler Realty Company*, 272 U.S. 365, at page 395, 47 S.Ct. 114, 71 L.Ed. 303. Because it concluded that the ordinance was not permissible under Ohio law, the district court expressly refrained from deciding whether or not its effect upon appellees' property was so arbitrary and unreasonable as to constitute a deprivation of their property in violation of the State and Federal Constitutions.

The judgment is accordingly reversed and the case is remanded to the district court for decision of that question.